William P. HEALY, Plaintiff,

v.

**AXELROD CONSTRUCTION COMPANY DEFINED BENEFIT PENSION PLAN AND TRUST, an employee benefit plan, Axelrod Construction Company, an Illinois corporation, Estate of Victor Axelrod and Irwin Axelrod, individually, Defendants.**

No. 91 C 4969.

United States District Court, N.D. Illinois, E.D.

March 24, 1992.

Lee Thomas Polk, Lauralyn G. Bengel, Murphy, Smith & Polk, Chicago, Ill., for plaintiff.

Robert J. Dargis, Thomas G. Oddo, Marks, Marks & Kaplan, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the defendants' motion to dismiss. For the reasons set forth below, the motion is denied.

## FACTS

Plaintiff William P. Healy ("Healy") brought this action under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, seeking declaratory and other equitable relief. In a four count complaint, Healy claims he is entitled to benefits in excess of $150,000 from a pension plan ("the Plan") set up by defendant Axelrod Construction Company ("Axelrod Construction"), and alleges breach of fiduciary duties, interference with protected rights under Section 510 of ERISA, 29 U.S.C. § 1140, and estoppel. On September 1, 1991, defendants filed the instant motion to dismiss under Fed. R.Civ.P. 12(b)(6) on the ground that plaintiff failed to exhaust his available intra-plan remedies as required by the Plan. Defendants Irwin Axelrod and the Estate of Victor Axelrod also seek dismissal of Count II for failure to state a claim, asserting that their duties as trustees do not extend to the administration of the plan. Last, the defendants contend that Healy failed to allege an effect on the employer-employee relationship in Count III as is required to state a claim under 29 U.S.C. § 1140.

Healy was an employee of Axelrod Construction or its affiliates, including defendant Banner Contracting Company, Inc. ("Banner"), from 1960 until April 16, 1991. Axelrod Construction established the Plan effective August 1, 1978. The Plan is a defined employee benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(3) and 1002(35), established for the purpose of providing retirement benefits. Healy was eligible to participate in the Plan when it became effective in 1978, having completed the minimum six months of employment and having satisfied the age requirement.

Victor Axelrod, now deceased, was an officer and the sole shareholder of Axelrod Construction. The complaint alleges that, when Axelrod Construction adopted the Plan, Victor Axelrod discussed Healy's participation on various occasions. Victor Axelrod allegedly informed Healy of the Plan but persuaded Healy not to participate, stating that "the benefits under that plan were not generous." Healy, however, did not sign a written waiver at that time. Healy also alleges that no one informed him of the specific terms, conditions, or benefits of the Plan.

The Plan provided that, to become a participant, an employee must apply in writing to his or her employer. Employers, however, were required to file applications on behalf of an eligible employees who failed to apply on their own. Nonetheless, neither Healy nor an employer filed an application on his behalf. Allegedly, no funds were contributed to the Plan for Healy's benefit, no insurance was purchased as the Plan required, and no "plan-related communications" were distributed to Healy.

At some time in the 1980s, Healy informed Victor Axelrod that he wished to participate in an employer-sponsored plan. Healy alleges that Victor Axelrod then induced him to sign a waiver form by claiming that Axelrod Construction could not establish a so-called 401(k) plan for its employees unless Healy signed the waiver. Victor Axelrod also told Healy that the Plan had to be terminated, and afterward Healy would receive benefits if he signed the waiver. Allegedly in reliance on these representations, Healy executed the waiver. The Plan, however, was not terminated until 1991.

After learning in January 1991 that Victor Axelrod's spouse received a payment from the Plan of approximately $400,000 and that another employee of Axelrod Construction received in 1990 approximately $42,000 in benefits, Healy suspected that he had been deceived and discriminated against concerning his pension rights. On March 28, 1991, Healy sent a letter to Irwin Axelrod requesting an accounting and claiming any benefits due him under the Plan.[1]

This request and claim was denied by letter dated April 4, 1991 stating that Healy had waived his benefits and thus had no accrued benefits. The letter also explained the Plan's claim review procedures, which provided that a request for a hearing must be filed within 60 days after a participant receives notice that his claim was denied.

In May 1991, participants were notified that the Plan would be terminated. On June 21, 1991, Healy requested a hearing to "complete the claim review process." Defendants responded on July 1, 1991, rejecting the request as untimely.

## DISCUSSION

On a motion to dismiss under Rule 12(b)(6), the court accepts the allegations of the complaint as true as well as the reasonable inferences to be drawn from the allegations. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). The court also takes into account the exhibits attached to the complaint. *Goodman v. Board of Trustees of Community College*, 498 F.Supp. 1329, 1337 (N.D.Ill.1980). The

1. Healy contends that the letter was merely a request for information and not a claim for benefits. The letter, which was attached to the complaint, reads in pertinent part:

I hereby request full information as to the amount of accrued benefits as defined in Article I, Section 1.1 of the Plan, including all retirement benefits, disability retirement benefits and death benefits provided under the Plan and *hereby make a claim for benefits* under Article II, Section 2.12 of the plan (emphasis added).

court, however, need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Coates*, 559 F.2d at 447. The complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is proper if it appears beyond doubt that the plaintiff can not prove a set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transp. Serv., Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

 ERISA provides a civil enforcement mechanism under which a participant or beneficiary can recover benefits or enforce his rights under a retirement plan. 29 U.S.C. § 1132(a)(1)(B). The statute also provides for equitable relief. 29 U.S.C. § 1132(a)(3).

 Defendants first assert that Healy's claim is barred because he failed to file a timely appeal with the Plan administrators. Although as a general principle a Plan participant or beneficiary must exhaust intra-plan remedies before bringing suit challenging a decision to deny benefits, *see Carter v. Signode Indus., Inc.*, 688 F.Supp. 1283, 1286 (N.D.Ill.1988), or alleging a violation of ERISA, *see Powell v. AT & T Communications, Inc.*, 938 F.2d 823, 825 (7th Cir.1991), ERISA itself does not mandate exhaustion of remedies. *See Villagomez v. AT & T Pension Plan*, No. 90 C 2620, 1991 WL 10657, at *2, 1991 U.S. Dist. LEXIS 747, at *5 (N.D.Ill. Jan. 22, 1991). Thus, it follows that exhaustion of remedies under ERISA is not jurisdictional, but is instead a judicially created doctrine furthering sound policies.

 In this circuit, application of the exhaustion doctrine is a matter of discretion for the district court. *Powell*, 938 F.2d at 825. The usual exceptions to the exhaustion requirement include where an intra-plan appeal would be futile or where a beneficiary is denied meaningful access to review procedures. *See Carter*, 688 F.Supp. at 1286–87. An exception has also been recognized when a plan's remedies are inadequate. *See Jess v. Pandick, Inc.*, 699 F.Supp. 698 (N.D.Ill.1988). Another limited exception has been found for actions for breach of fiduciary duty. *Rochford v. Joyce*, 755 F.Supp. 1423, 1430 (N.D.Ill.1990) (and cases cited therein); *Bartz v. Carter*, 709 F.Supp. 827, 828 (N.D.Ill.1989).

There is still some confusion as to the applicability of exhaustion to fiduciary breach claims. The Seventh Circuit has determined that "a district court may properly require exhaustion" before an ERISA violation claim is filed. *Powell*, 938 F.2d at 826. In its opinion, however, the Seventh Circuit stated that "[t]his court held in *Kross [v. Western Elec. Co.*, 701 F.2d 1238 (7th Cir.1983) ] that the strong federal policy encouraging private resolution of ERISA-related disputes mandates the application of the exhaustion doctrine to statutory claims for breach of a fiduciary duty under ERISA." *Powell*, 938 F.2d at 825. Both *Kross* and *Powell* held that the district courts did not abuse their discretion in imposing the exhaustion requirement. *Kross*, 701 F.2d at 1245; *Powell*, 938 F.2d at 827. In each case, the plaintiff brought an action for the interference with protected rights under 29 U.S.C. § 1140 and not for breach of fiduciary duty under 29 U.S.C. § 1104. *Kross*, 701 F.2d at 1239; *Powell*, 938 F.2d at 824. The *Kross* court merely recognized "that strong federal policy expressed in case law ... mandates the application of the exhaustion doctrine in *this case*." *Id.* at 1244 (emphasis added).

These cases show that it is still generally within the court's discretion to require exhaustion. The Seventh Circuit's decisions, however, involve strong policy considerations. The policy underlying exhaustion is

promotion of judicial economy by encouraging settlement and by filtering out frivolous claims. *Kross,* 701 F.2d at 1244; *Bartz,* 709 F.Supp. at 828. Exhaustion promotes consistent treatment of claims, nonadversarial dispute resolution, and decreases the cost and time of settlement. *Powell,* 938 F.2d at 826.

In this case, these policies would not be substantially furthered by dismissing Healy's claim for failure to exhaust his intra-plan remedies. The claim does not appear to be frivolous. Healy's allegations, if true, would show a willful intent by the Plan fiduciaries to exclude Healy rather than a mistake. The waiver at issue was allegedly procured by a fiduciary's misconduct. Review by these fiduciaries would therefore probably be futile. Requiring exhaustion would merely delay rather than prevent litigation. Moreover, concerns such as those in *Tiger v. AT & T Technologies,* 633 F.Supp. 532 (E.D.N.Y.1986), regarding the staleness of evidence are not present here. Axelrod Construction's Plan did not provide for arbitration or other nonadversarial resolution. Congress may have intended that fiduciaries have primary responsibility for claims processing, but this policy is not furthered by requiring exhaustion when the alleged goal of the fiduciaries is to exclude a participant for the fiduciaries' own economic benefit.

Regarding the counts not involving alleged breach of fiduciary duty, where such counts are "intertwined" with a fiduciary duty claim, this court has refused to impose the exhaustion requirement on the other claims. *Bartz,* 709 F.Supp. at 828. The non-fiduciary claims here are inseparable from the fiduciary claims as they all arise from the same course of conduct. Requiring exhaustion of the remaining claims would not further judicial economy or the interests of justice, and the court therefore declines to do so.

Irwin Axelrod and the Estate of Victor Axelrod next contend that Healy's fiduciary breach claim should be dismissed as to them because their trustee duties do not apply to the allegations at hand and therefore they cannot be held personally liable under this theory. Under 29 U.S.C. § 1132(a)(3)(B), equitable relief is available to redress breaches of fiduciary duty affecting individual beneficiaries in a manner unique to them as opposed to breaches affecting a plan as a whole. *Vogel v. Independence Fed. Sav. Bank,* 728 F.Supp. 1210, 1219–22 (D.Md.1990).

Congress intended a functional approach to defining fiduciary under ERISA. *Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131 (7th Cir.1983). ERISA provides that a person is a fiduciary to the extent "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management" or to the extent "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21). Fiduciary obligations are determined with respect to the conduct alleged and the amount of control allegedly exercised. *Schulist,* 717 F.2d at 1131.

In Count II, Healy alleges that Victor Axelrod, Axelrod Construction, "and any other fiduciary of the Plan holding a position of authority at the times in question" breached fiduciary duties owed to Healy under 29 U.S.C. § 1104(a)(1). Irwin Axelrod is not named in Count II. The court will not consider him a defendant as to that count and confines the discussion to Victor Axelrod.

Healy alleges that Axelrod Construction is the Plan sponsor and Plan administrator, *see* 29 U.S.C. §§ 1002(16)(B) and 1002(15), and that Axelrod Construction is a fiduciary within the meaning of ERISA. 29 U.S.C. § 1002(21). Healy further alleges that Victor Axelrod was an officer and sole shareholder of Axelrod Construction and was a trustee and fiduciary of the Plan. A director and a corporation can have cofiduciary liability for the purposes of 29 U.S.C. § 1104(a)(1). *Leigh v. Engle,* 727 F.2d 113, 133 (7th Cir.1984); *Sandoval v. Simmons,* 622 F.Supp. 1174 (C.D.Ill.1985). Under § 11.12 of the Plan, the employer's responsibilities include making contributions, appointing the trustee and administrator, and to formulate the Plan's "fund-

ing policy and method." The administrator has the duty to administer the Plan. Healy alleges that Victor Axelrod controlled Axelrod Construction, Healy's employer and the plan administrator. Thus, the complaint alleges that Victor Axelrod exercised control over the administration of the Plan, thus making him a fiduciary within the meaning of ERISA. 29 U.S.C. § 1002(21).

It remains to be seen whether Healy properly alleged a violation of the fiduciary responsibilities. The fiduciary duties under ERISA include those derived from common law trust principles. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 626 (7th Cir. 1987). A fiduciary's duty extends through every dealing with beneficiaries. *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C.Cir.1990). A fiduciary can not mislead those to whom he or she owes a duty of loyalty. *Id.* (citing *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir.1988)).

The duty of loyalty extends to the beneficiaries or participants of the trust. *See Restatement (Second) of Trusts* § 170. ERISA provides that a fiduciary must act solely in the interest of the participants and beneficiaries, must act for the exclusive purpose of providing benefits to participants, and must act in accordance with the documents and instruments which control the plan. 29 U.S.C. § 1104(a)(1). An ERISA fiduciary has a duty to disclose and inform a beneficiary of material facts which affect the interests of the beneficiary and of the fiduciary's knowledge of prejudicial acts by an employer such as failing to contribute to a pension fund. *Eddy*, 919 F.2d at 750–51 (citing *Dellacava v. Painters Pension Fund*, 851 F.2d 22, 27 (2d Cir.1988)). The failure to provide information is a breach of fiduciary duty, *Kleinhans*, 810 F.2d at 621, as is the failure to pay benefits to a beneficiary when they become due. *Winer v. Edison Bros.*, 447 F.Supp. 836 (E.D.Mo.1978), *aff'd*, 593 F.2d 307 (8th Cir.1979).

Healy alleges among other things that Victor Axelrod and Axelrod Construction deceived Healy and thereby caused him to fail to assert his rights under ERISA, failed to provide information, failed to include Healy as a participant, failed to provide Healy with requested information, failed to fund pension liabilities with respect to Healy, failed to purchase insurance on behalf of Healy, and failed to review in good faith Healy's claim for benefits, all as required by the Plan. Thus Healy has properly alleged a breach of 29 U.S.C. § 1104(a)(1).

As far as the requested relief is concerned, 29 U.S.C. § 1132 provides for equitable relief. The appropriate remedy is to restore a beneficiary to the position he would have occupied but for the breach. *Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir.1985). Although courts have held that recovery for breach of fiduciary duty inures to the benefit of the Plan as a whole, this court has noted that this holding "applies to cases in which a beneficiary sues for breach of fiduciary duty which affects the plan as a whole," not to those affecting "the suing beneficiary in a unique way." *Bartz*, 709 F.Supp. at 829 n. 2. *See also Villagomez v. AT & T Pension Plan*, No. 90 C. 2620, 1991 WL 10657 at *3–4, 1991 U.S. Dist. LEXIS 747 at *10 (N.D.Ill. Jan. 22, 1991) (approving this distinction). The allegations in the complaint at hand involve instances of conduct affecting Healy specifically as a beneficiary or participant. Thus, insofar as Healy is asking to redress violations of fiduciary duties through equitable remedies, including declaratory judgment, injunction and constructive trust, he has properly brought this action.

Defendants next contend that this court should dismiss Healy's claim under 29 U.S.C. § 1140 because Healy has not alleged any effect on the employer-employee relationship. This section makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under" a plan or "for the purpose of interfering with the attainment of any right to which such participant may become entitled under" a plan.

The exact perimeters of this section have not been fully developed judicially. *See Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir.1990). The clear language of the statute, however, covers actions directed at interfering with the attainment of rights, such as benefits, to which a participant may eventually become entitled. This section was intended to remedy discriminatory conduct designed to interfere with the attainment of either initial benefits or, for vested employees, additional benefits. *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 236 (4th Cir. 1991).

■ To allege an act of discrimination under § 1140, the plaintiff needs to allege economic injury, the actual or constructive loss of employment, or a threat of violence. *Newton v. Van Otterloo*, 756 F.Supp. 1121, 1135 (N.D.Ind.1991). The economic injury can relate to the continuation of benefits itself under an ERISA plan. *See Newton*, 756 F.Supp. at 1137. Here, the alleged fraud against Healy was intended to prevent him from obtaining benefits.

■ A quick perusal of cases involving 29 U.S.C. § 1140 illustrates that fraudulent activity excluding an employee from participation in a benefit plan can constitute an act of discrimination. In *Vogel v. Independence Fed. Sav. Bank*, 692 F.Supp. 587, 593 (D.Md.1988), the court noted that "while it is true the section most commonly is applied when an employee is wrongfully terminated to prevent his pension rights from vesting, the language of the statute cannot be read so as to limit its application solely to those situations." In *McGinnis v. Joyce*, 507 F.Supp. 654, 657 (N.D.Ill.1981), the court held that threatening an employee with violence to prevent him from pursuing his lawsuit constituted a cognizable claim under 29 U.S.C. § 1140.

■ Further, a scheme aimed at avoiding future vesting of benefits would constitute an act of discrimination. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 857 (3rd Cir.1987), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). In *Gavalik*, the employer devised a scheme which identified unfunded liabilities and laid off employees who had not yet become eligible for pension benefits. *Id.* As the Third Circuit noted, the primary purpose of 29 U.S.C. § 1140 "is to prevent employers from intentionally interfering with impending pension eligibility whether motivated by malice toward the particular employee(s) or by a general concern for the economic stability of the company." *Id.* at 857 n. 39. ERISA protects rights about to be earned "but frustrated due to unlawful employer action [and] benefits earned but not paid." *Conkwright*, 933 F.2d at 237.

An act of fraud directed at preventing an employee's pension benefits from accruing is analogous to threatening or harassing an employee in order to prevent the accrual of benefits. Healy alleges that Victor Axelrod intended to prevent Healy's pension eligibility through his discriminatory actions. Healy asserts defendants' actions constitute discrimination in that they singled him out and excluded him from participation in the pension benefit plan through alleged misrepresentations.

■ Last, defendants ask the court to dismiss Count IV on an estoppel basis without providing any supporting authority or argument. While the Seventh Circuit has held a party may properly set forth a claim for estoppel under 29 U.S.C. § 1132, *see Black v. T.I.C. Inv. Co.*, 900 F.2d 112 (7th Cir.1990); *Lockrey v. Leavitt Tube Employees Profit Sharing Plan*, 748 F.Supp. 662 (N.D.Ill.1990), neither party briefed the issue and therefore the court will not address it. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him." *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir.1990) (citations omitted).

## CONCLUSION

For the above reasons, the defendants' motion to dismiss is denied.

IT IS SO ORDERED.